# TURNBULL & OTHERS,

*againſt*

# The Ship ENTERPRIZE.

## *JUDGEMENT.*

THE bill in this cauſe is filed by certain merchants againſt the ſhip Enterprize, for the recovery of monies advanced by them to the captain of the ſaid ſhip, in the port of Philadelphia, to fit her out for an intended voyage ; the oſtenſible or real owners, or ſome of them, being, at the time of ſuch advancements, within the State, and known to the libellants.

AND it has been urged in ſupport of the libel, That every contract of the
captain,

captain, for neceffaries for a fhip, implies an hypothecation, and induces a lien on the fhip in favour of the creditor, fueable in the Admiralty by the rules of civil law. And the cafe principally relied upon as authority for this doctrine, is cited from *Cowper*, page 636.

THE cafe referred to is a fuit at common law, brought by a ropemaker, againft the owners of a fhip, for ropes furnifhed to the captain. The plaintiff, having charged *Harwood* (the captain) and the owners of the fhip for the ropes, without naming or knowing who the owners were. The fact was, that the owners, according to the cuftom of the county of Effex, in England, where they probably refided, had leafed the fhip to Harwood for a term of years, on certain conditions : and the queftions were, Whether, under thefe circumftances, Harwood was not both captain and owner, during the term ? and Whether the original owners ought to be refponfible for debts contracted on account of the fhip whilft

whilſt in the poſſeſſion of Harwood, un-der the leaſe ?

Lord Mansfield was of opinion, that neither the leaſe, nor the ignorance of the creditor as to the names or perſons of the owners, could exonerate them. And to ſhew that the owners are bound, he ſays—" Suppoſe the ſhip had been " impounded in the Admiralty, and *that* " had happened at the end of the term, " the owners could not have had their " ſhip, without paying the debt for " which ſhe had been impounded."

But this caſe is brought into view chiefly becauſe lord Mansfield, in giv-ing his opinion, obſerves—that the cre-ditor had three ſecurities for his debt, viz. the perſon of the captain with whom he contracted, the *ſpecific ſhip*, and the owners.

It ſhould be remember'd, however, that this was a ſuit at common law ; that the owners, the ſhip, the captain, the creditor, and the contract, were all within the realm—and there can be no doubt but that the creditor might have
his

his action at law either against the persons of the contractors, or might attach their property, the ship, for his debt.

BUT this case has no reference whatever to the maritime or civil law. The doctrine of hypothecation is never once mentioned, nor is the contract of the captain at all placed upon that ground. The principal object was, to determine whether the lease of the ship did not exonerate the lessors during the term.

So, in the case cited from *Vezey*, page 154. This also was purely a common law process; wherein the parties and the whole transaction appear to have been *infra corpus comitatus.* " Certain-
" ly," says the lord chancellor, " by the
" maritime law the master has power to
" hypothecate the ship *during the voyage,*
" *and from the necessity of the case ;* but
" it is different where the ship is infra
" corpus comitatus, and the contract
" made by the owners or master on
" land, and not arising from necessity—
" then, the laws of the land must pre-
" vail."—And this is clearly confonant
with

with the whole current of authorities refpecting the doctrine of hypothecation, viz. that it muft be made during the voyage, and from the neceffity of the cafe.

WHEN money is borrowed on the fhip, before the voyage begun, the fhip is not anfwerable in the Admiralty, 1ft *Raym.* 578.—So, in 2d *Raym.* 982, in the cafe of Johnfon *v.* Shippen, chief juftice Holt fays—" If a fhip be hypothecated " before a voyage begun, *that* is not a " matter within the jurifdiction of the " Admiralty ; for it is a contract made " here, and the owners can give fecuri- " ty to perform the contract."

IT appears, then, to be a fettled doctrine, that a fhip cannot be hypothecated, according to the maritime law, before the voyage is begun, or in places where the owners refide, even for thofe neceffaries, without which the fhip could not proceed to fea. The law means to favour the completion, not the commencement of a voyage.

FOR this reafon, the legiflature of Pennfylvania

D

fylvania hath, *by a fpecial act,* given to the artificers who build or repair, and to thofe who furnifh neceffaries to fit out a fhip for fea, a lien upon the veffel, fueable in the Admiralty, before the voyage is begun, becaufe the maritime law does not extend to their fecurity.

SINCE, then, it appears that the advance of monies to fit out the fhip Enterprize, was made before the commencement of her voyage, and not from neceffity; and that the captain, the owners, or fome of them, and the contractors, were all within the State at the time of the tranfaction; and as the fuit is not brought under the act of affembly of the 27th of March, 1784, I cannot admit this cafe to be of admiralty jurifdiction, and, therefore, I adjudge that the bill be difmifs'd, and that the libellants pay the cofts of fuit.